(134 App. Div. 402.)

### RERIS v. HAINES.

(Supreme Court, Appellate Division, First Department.  November 5, 1909.)

1. Appeal and Error (§ 1099*)—Subsequent Appeal—Law of the Case.
    Where the Appellate Division, on a prior appeal in a death action, reversed a judgment for plaintiff on the ground that he had failed to show that the injuries sustained were the proximate cause of decedent's death, which went to the merits of the case, so that no inference could be drawn from the fact that no opinion was expressed as to the sufficiency of the evi-

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

dence to show negligence, even though the records be the same, the former decision of the court is not res judicata on the question of defendant's negligence upon a subsequent appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4372; Dec. Dig. § 1099.*]

2. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—WARNING—QUESTIONS FOR JURY.

In an action for the death of a servant, whether the servant was warned of the danger of a stone falling on him, and whether he heard and understood the warning, if given, *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1044, 1050; Dec. Dig. § 286.*]

3. TRIAL (§ 140*)—QUESTIONS FOR JURY—CREDIBILITY OF WITNESSES.

The credibility of a witness, in view of his relationship to defendant and his connection with work in which plaintiff was injured, is a question for the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 334, 335; Dec. Dig. § 140.*]

4. MASTER AND SERVANT (§ 286*)—INJURY TO SERVANT—ACTIONS—SUFFICIENCY OF EVIDENCE.

In an action for the death of a servant, evidence *held* sufficient to go to the jury on the question of defendant's negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1001; Dec. Dig. § 286.*]

5. MASTER AND SERVANT (§ 289*)—INJURY TO SERVANT—ACTIONS—QUESTION FOR JURY—CONTRIBUTORY NEGLIGENCE.

In an action for the death of a servant, the question of contributory negligence *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1089; Dec. Dig. § 289.*]

6. MASTER AND SERVANT (§ 286*)—INJURY TO SERVANT—QUESTION FOR JURY—DUTY TO WARN SERVANT.

In an action for the death of a servant, being struck by a stone which slipped from an embankment where the servant and others were excavating, whether the master should not have removed the stone, shored it up, or warned decedent of the danger, *held* to be for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1026, 1044; Dec. Dig. § 286.*]

Patterson, P. J., and Ingraham, J., dissenting.

Appeal from Trial Term, New York County.

Action by Guiseppa Reris, administrator of Paolo Moscarello, against Samuel B. Haines. Judgment of dismissal, and plaintiff appeals. Reversed, and new trial granted.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, LAUGHLIN, and SCOTT, JJ.

M. L. Malevinsky, for appellant.

Eugene A. Philbin (Stephen P. Anderson, on the brief), for respondent.

LAUGHLIN, J. On a former appeal herein from a judgment in favor of the plaintiff, the judgment was reversed on the ground that the plaintiff failed to show that the injuries sustained were the proximate cause of his death. Moscarello v. Haines, 130 App. Div. 135,

114 N. Y. Supp. 519. One of the members of the court, in a concurring opinion, expressed the further opinion that the plaintiff failed to show that the defendant was guilty of negligence. The majority of the court expressed no opinion on that point. The failure of the plaintiff to show that the death of the decedent was due to the injuries went to the merits of the case, and therefore no inference as to the opinion of the court was drawn, one way or the other, from the fact that an opinion was not expressed with respect to the sufficiency of the evidence to show negligence. Even though the records be the same, the former decision of this court is not res adjudicata on the question of the defendant's negligence.

I am of opinion that the evidence on that point was sufficient to take the case to the jury. The decedent was an Italian laborer, who could not speak or understand the English language well, and whose hearing was affected. The accident happened while an excavation was being made on the defendant's premises for the foundation for a building. The work had been let by contract; but the contractor failed, and the defendant had taken charge of the work, and was prosecuting it by day labor for the account of the contractor. A stone more flat than round, and about 18 inches wide and 3 feet long, was encountered during the process of excavation, which projected horizontally some 12 to 16 inches, or about one-third of its length, within the lines of the excavation. The attention of the son of the defendant, who represented him on the work, and had a general power of attorney to execute contracts, and had final authority in all matters relating to the work, was drawn to the fact that this stone was met with, and he consulted the foreman, the stone masons, and the laborers, by putting the question to them as to whether the stone should be left to form part of the wall, and be racked up and thus supported by the permanent wall before the earth underneath it should be excavated, as had been done in another instance on the same work, or removed, and it was determined, without objection on the part of any person present, that it should be left to form part of the wall. The work was then proceeded with, and directions were given not to excavate under the stone, and there is no evidence that such directions were disobeyed. After the general level of the excavation reached a point about 18 inches below the stone, the stone fell or slid out of the embankment, and injured the decedent, who was working within a few feet of it. The stone was on the side of the excavation toward a public street. The excavation showed that for some 4 feet in depth it was through filled earth, and not through virgin soil; and, although the record does not show to what depth the excavation had been made, there is evidence tending to show that part of the soil and material around the stone was filled material, consisting in part of cinders evidently placed there as a foundation for the street or curb. The boulder was examined by the defendant's son, and tested by the pressure of his weight and by hammering, with a view to determining how far it projected into the bank and how fairly it was held, and he therefore stated, to those whom he consulted with respect to whether it should be left for part of the wall or not, that it appeared to be

, firm, and he testified that such was the fact. He further testified with respect to the embankment through which the excavation was made:

"It was a sufficiently hard bank to hold itself up, and not a made bank all the way. It had been partially filled in."

No directions were given to have the stone shored up, although that might have been done, and would have supported it. The son of the defendant observed that the decedent was working immediately in front of the stone, facing away from it, within a few minutes of the accident, and, according to his testimony, he took hold of the decedent by the shoulder and turned him about, and, drawing his attention to the fact that the stone might slip, told him to work with his face towards it, saying that, if the stone should then slip, it would not hurt him, to which he claims the decedent responded, "All right." It does not appear whether or not this direction, if given, was observed by the decedent; but it was a question for the jury whether or not it was given, for the credibility of the witness, in view of his relationship to the defendant and his connection with the work, was for the jury, and it was also a question for the jury whether or not the decedent heard and understood the direction, if given. There is no evidence to indicate that the decedent had any special knowledge or experience to enable him to judge of the character of soil, or to know whether the excavation was being made through filled or virgin soil, or to appreciate the danger. The question of contributory negligence, therefore, was for the jury.

I am of opinion that it was also a question for the jury to determine whether or not the defendant should not have removed the stone, or shored it up, or warned the decedent of the danger. It may well be that, if an employé has the same knowledge and opportunity to judge of the danger as the master, the master may, as is claimed to have been attempted in this case, call upon the employé to assume the risk with him; but it does not appear that the decedent was personally consulted, or that he heard or understood the inquiry, if any such inquiry was addressed to the employés upon the work.

It follows, therefore, that the judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event.

McLAUGHLIN and SCOTT, JJ., concur. PATTERSON, P. J., dissents. INGRAHAM, J., dissents on opinion on former appeal (130 App. Div. 135, 114 N. Y. Supp. 519).